UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHINESE HOSPITAL ASSOCIATION, <br><br> Plaintiff, <br><br> v. <br><br> JACOBS ENGINEERING GROUP, INC., <br><br> Defendant. | Case No. 18-cv-05403-JSC <br><br> **ORDER RE: MOTION TO DISMISS** <br> Re: Dkt. No. 7 |

Plaintiff Chinese Hospital Association alleges that Defendant Jacobs Engineering Group, Inc. breached its written agreement with Plaintiff for architectural services. Defendant moves to dismiss the complaint on the basis that it is barred by the statute of limitations.[1] (Dkt. No. 7.) Having considered the papers and having had the benefit of oral argument on November 9, 2018, the Court GRANTS in part and DENIES in part the motion. The running of the statute of limitations as to the *entirety* of Plaintiff's claim is not apparent from the face of the Complaint.

## BACKGROUND

**A. Complaint Allegations**

Plaintiff is a nonprofit corporation, organized and existing under the laws of the State of California, that has provided healthcare services at 835 Jackson Street in San Francisco. (Dkt. No. 1-3, ¶¶ 1, 4.[2]) Jacobs Engineering Group, Inc. ("Jacobs") is a Delaware corporation doing business in the City and County of San Francisco, California providing engineering and architectural services. (*Id.* at ¶ 2.)

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 10 & 16.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Plaintiff entered into a written agreement with Carter & Burgess, Inc. ("Carter") for architectural services in May 2007.[3] (*Id*. at ¶ 4.) Plaintiff hired Carter as the lead architect to design and administer the construction of a modern, eight-story hospital building that would both replace an existing facility and put the entire campus into compliance with current and forthcoming seismic requirements without interrupting Plaintiff's ability to continue to serve the health care needs of the community. (*Id*.) In particular, Section 1.2.3.2 of the agreement provided:

> Architect's services called for by this Agreement shall be performed consistent with that degree of care and skill ordinarily exercised under similar conditions by similar design professionals practicing at the same time in the same or similar locality.

(*Id.* ¶ 5.) The agreement also required that the design services, which included preparing schematic design documents through completed construction documents, be in conformity with the applicable California building code requirements and other governmental authority requirements. (*Id*. at ¶ 9.) Construction documents would be prepared in stages called increments; once approved by the California Office of Statewide Health Planning and Development ("OSHPD"), construction work would commence on OSHPD-approved increments while the design of later increments was in progress. (*Id*. at ¶ 10.) Increment 5 pertained to the floor plan of the hospital and was subject to particularly strict design requirements including, but not limited to, the layout of patient rooms, corridor widths, and the flow of soiled or clean equipment through the hospital. (*Id*.)

Jacobs acquired Carter at some point after the agreement was executed. (*Id*. at ¶ 6.) In approximately mid-2010, the design work that Carter had been performing was substantially transferred to Jacobs' Dallas office. (*Id*. at ¶ 7.) Nearly two years later, Carter, Jacobs, and Plaintiff entered into a novation agreement. (*Id*. at ¶ 8.) Pursuant to the novation, Jacobs assumed Carter's duties and responsibilities under the May 2007 written agreement. (*Id*.)

In September 2013, after construction of the project had commenced, OSHPD found some of Jacobs' construction documents defective. (*Id*. at ¶ 11.) In November of 2013, Plaintiff

---

[3] Plaintiff incorporates into its complaint the agreement's material terms. (Dkt. No.1-3 at ¶ 4)

2

became aware of the serious defects in the construction documents and subsequently terminated the agreement with Jacobs. (*Id.*)

In December 2013, Plaintiff and Jacobs entered into a Termination and License Agreement that granted Plaintiff the right to correct the designs with another architect and to continue with the project. (*Id.* at ¶ 12.) The Termination and License Agreement preserved Plaintiff's right to bring claims directly against Jacobs for damages arising from work performed by Jacobs and/or Carter prior to the November 2013 termination. (*Id.*)

Thereafter, Plaintiff hired a replacement architect and completed the project with significantly increased design and construction expenses. (*Id.* at ¶¶ 13-19.) The replacement architect addressed or corrected specific defects in the construction documents prepared by Jacobs including the following:

   a. The number of ADA accessible bathrooms on certain floors was fewer than required by the California Building Code.
   b. The clear space around patient beds was insufficient to comply with the California Building Code.
   c. The pharmacy space violated the California Board of Pharmacy regulations because it did not separate the area for mixing chemotherapy drugs from the area for standard medication preparation.
   d. The medical gas room could not be used because vendors would not deliver medical gases to that location.
   e. The interconnections–including physical portals, electronic communications, utilities, and shared services–between the existing 1979 building and the new construction were not adequately designed and/or were omitted entirely, contrary to the requirements of the written agreement, the program documents developed by Carter and Jacobs, and the applicable law.

(*Id.* at 14.) Remedying these defects delayed the construction, which also caused Plaintiff to incur additional costs. (*Id.* at ¶¶ 17, 18.)

In March of 2017, Plaintiff entered into a tolling agreement with Jacobs that tolled potential claims against Jacobs for one year. (*Id.* at ¶ 20.)

**B. Procedural Background**

On July 30, 2018, Plaintiff filed a certificate of merit in the Superior Court of the County of San Francisco pursuant to California Code of Civil Procedure § 411.35(b)(1).[4] (Dkt. No. 1-5.)

---

[4] California requires that in "every action . . . arising out of the professional negligence of a person

3

The next day, Plaintiff filed this action in that same court. (Dkt. No. 1-3.) Plaintiff pled a single claim for breach of contract. (*Id.*) Defendant thereafter removed the action based on diversity jurisdiction and four days later filed the underlying motion to dismiss for failure to state a claim. (*Id.*)

## JURISDICTION

In federal courts, subject matter jurisdiction may arise from either "federal question jurisdiction" or "diversity of citizenship" when the amount in controversy exceeds $75,000. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Defendant here removed on the grounds of diversity jurisdiction. The "core principle of federal removal jurisdiction on the basis of diversity" is "that it is determined (and must exist) as of the time the complaint is filed *and* [as of the time] removal is effected." *Strotek Corp. v. Air Transp. Ass'n. of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002) (emphasis added). To properly allege diversity jurisdiction, a plaintiff must claim more than $75,000 in damages. 28 U.S.C. § 1332(a). In addition, "diversity jurisdiction requires complete diversity between the parties—each defendant must be a citizen of a different state from each plaintiff." *Diaz v. Davis (In re Digimarc Corp. Derivative Litig.)*, 549 F.3d 1223, 1234 (9th Cir. 2008); 28 U.S.C. § 1331.

Here, the amount in controversy requirement is satisfied as Plaintiff has pled damages in excess of $10,000,000. (Dkt. No. 1-3 at ¶ 25.) The diversity of citizenship requirement is likewise met because Plaintiff is a California corporation and Jacobs is a Delaware corporation with its corporate headquarters in Texas. (Dkt. No. 1 at ¶¶ 5-6.) Accordingly, removal is proper on the basis of diversity jurisdiction.

//

//

---

holding a valid architect's certificate . . . the attorney for the plaintiff . . . shall file and serve the certificate specified in subdivision (b)." Cal. Code of Civ. Pro. § 411.35(a). Subdivision (b)(1) requires the attorney to review the facts of the case and consult with and receive the opinion from at least California-licensed architect "in the same discipline as the defendant" and to conclude "on the basis of this review and consultation that there is a reasonable meritorious case for filing" the action. Cal. Code of Civ. Pro. § 411.35(b)(1). Failure to do so may constitute "unprofessional conduct" and "grounds for discipline against the attorney," a demurrer or motion to strike. Cal. Code of Civ. Pro. § 411.35(f)-(g).

**LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint where the action fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). Under Federal Rule of Civil Procedure 8(a)(2) a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.2008). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). "Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (citing *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013)). "If, from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper." *Id.* (citing *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).

If the Court concludes that a Rule 12(b)(6) motion to dismiss should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).

## REQUEST FOR JUDICIAL NOTICE AND
## CONSIDERATION OF EXTRINSIC EVIDENCE

"[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), [r]eview is limited to the complaint." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks and citation omitted). However, a court may consider records outside of the complaint without converting a 12(b)(6) motion to a summary judgment motion in two circumstances. First, the court may consider records which are submitted as part of the complaint or, if not physically attached to the complaint, their authenticity is not questioned and the complaint necessarily relies upon the records. Second, the court may take judicial notice of matters of public record. *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001). A "judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Defendant requests that the Court consider the following exhibits in support of its motion to dismiss Plaintiff's complaint: (A) the parties' tolling agreement, (B) the parties' novation agreement, (C) the California Secretary of State Statement of Information form for Defendant, and (D) Plaintiff's certificate of merit originally filed in San Francisco County Superior Court. (Dkt. Nos. 8, 8-1, 8-2, 8-3, 8-4.) Plaintiff does not oppose consideration of these records except as to the novation agreement at Exhibit B. Accordingly, the Court GRANTS notice of exhibits A, C and D. *See Lee*, 250 F.3d at 688-89.

Plaintiff does oppose consideration of the novation agreement. (Dkt. No. 12 at 7:23-27.) However, Plaintiff's complaint necessarily relies on the novation agreement; without it, Defendant would not have an agreement with Plaintiff. (*See* Dkt. No. 8-2 at 2, ¶ (b)(3) ("The [Defendant] by

6

this agreement becomes entitled to all rights, titles, and interest of the transferor in and to the contracts as if the transferee were the original party to the contract")). Accordingly, the Court finds it can consider the novation agreement without converting Defendant's motion to one for summary judgment.

**DISCUSSION**

Defendant argues that Plaintiff's claim is barred by the statute of limitations. Although Plaintiff brings a single breach of contract claim, Defendant insists that to determine the applicable statute of limitations courts look to the gravamen and substance of the complaint rather than the label used by the plaintiff. Defendant contends that the gravamen and substance of Plaintiff's complaint is negligence and thus subject to a shorter, two-year statute of limitations. Plaintiff counters that its complaint is timely because it lies in contract, not tort, and is thus subject to a four-year statute of limitations. Before the Court can resolve which statute of limitation applies, it must determine which state's law governs.

**I. Whether California or Texas law Applies?**

As a threshold matter, the Court must decide whether the choice of law provision in the underlying agreement requires the Court to apply Texas or California law. Defendant contends that the Court should apply Texas law based on a choice of law provision in the parties' agreement. The provision states that the agreement "shall be governed by the law of the principal place of business of the Architect, unless otherwise provided in section 1.4.2." (Dkt. No. 1-3 at 18, Sec. 1.3.7.1.) Neither party disputes the enforceability of this clause. Defendant has not met its burden of showing that, based on the complaint and the records that the Court may consider on the 12(b)(6) motion, the choice of law provision requires the application of Texas law.

First, while Carter's principal place of business was Texas at the time the agreement was created (Dkt. No. 1-3 at 11 (listing Carter's address as "1420 W Mockingbird, Suite 800, Dallas, Texas 75247")), Defendant has not demonstrated that it is Carter's—rather than Defendant's— principal place of business that should govern. The novation agreement reincorporates the material terms of the original agreement, including the choice of law provision. (Dkt. No. 8-2 at 2 & 4.) Further, the novation agreement states that Defendant Jacobs stands in the shoes of Carter

7

as if it were the original party to the agreement. (Dkt. No. 8-2 at 2 ("[the Transferee] by this agreement becomes entitled to all . . . *titles* . . . of the Transferor in and to the contracts as if the Transferee were the original party to the contracts.").) Therefore, drawing all reasonable inferences in Plaintiff's favor, Defendant is the Architect for the purposes of the choice of law provision.

Second, Defendant has not proven that its principal place of business was Texas at the relevant time. Neither the complaint's allegations nor the extra-complaint materials prove that at the time the novation was entered (and Defendant made a party to the agreement) Defendant's principal place of business was Texas. To the contrary, the novation recites that Jacobs is "a corporation duly organized and existing under the laws of Delaware with its principal *office* in Pasadena, California."[5] (Dkt. No. 8-2 at 2 (emphasis added).) Principal office may be different from business, but there is nothing properly before the Court that explains this apparent contradiction to Defendant's argument. While Defendant's California Secretary of State form suggests a Texas location in 2018, Defendant has not shown why that is the relevant time period. (Dkt. No. 8-3.) There is also nothing before the Court as to what the parties meant by "principal place of business."

It is "solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence." *De Guere v. Universal City Studios, Inc.*, 56 Cal. App. 4th 482, 501 (1997) (quoting *Parsons v. Bristol Development Co.*, 62 Cal.2d 861, 865 (1965) (internal citations omitted). "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636. Here, the pleadings and the novation agreement do not make it obvious that the parties' intended the term "principal office" to be interchangeable with "principal place of business." Nor is the agreement clear as to when the choice of law determination is made—when the parties entered into the agreement, when the breach occurred, or when the lawsuit was filed. Thus, there exists more than one plausible interpretation of the choice of law provision. "[W]hen two equally plausible interpretations of the language of a contract may

---

[5] The parties dispute neither the legal veracity of the novation nor that it occurred. Accordingly, the Court shall treat the agreement as a novation for the purposes of this motion.

8

be made . . . parol evidence is admissible to aid in interpreting the agreement, thereby presenting a question of fact." *WYDA Assocs. v. Merner*, 42 Cal. App. 4th 1702, 1710 (1996) (quoting *Walter E. Heller Western, Inc. v. Tecrim Corp.* 196 Cal.App.3d 149, 158 (1987)). At the pleading stage, the Court cannot resolve such ambiguities and instead must draw all inferences in Plaintiff's favor including that Jacobs' principal place of business was California, and thus, that California law applies.

**II. Is the Action Time-Barred?**

Having concluded that California law applies, at least for purposes of Defendant's motion to dismiss, the Court must now determine whether Plaintiff's claim is barred by the statute of limitations. The first question, then, is which statute of limitations applies. Defendant insists that although pled as a breach of contract, Plaintiff's claim sounds in negligence and therefore the two-year negligence statute of limitations applies. *See* Cal. Code Civ. Proc. § 335.1. The parties agree that if the two-year statute applies, the claim is time-barred.

"To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the "gravamen" of the cause of action." *Hensler v. City of Glendale*, 8 Cal. 4th 1, 22–23 (1994), *as modified on denial of reh'g* (Sept. 22, 1994) (citing *Leeper v. Beltrami*, 53 Cal. 2d 195, 214 (1959)). "[T]he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations under our code." *Id*. (citing *Maguire v. Hibernia S.& L. Soc.*, 23 Cal.2d 719, 733 (1944)).

In its sole cause of action styled as a breach of contract, Plaintiff alleges that it "performed all conditions, covenants, and promises required to be performed on its part in accordance with the terms and conditions of the agreement," and that Defendant breached the agreement because it failed to meet "the standard of care required by the agreement" and to "follow the functional requirements for the project." (Dkt. No. 1-3 at ¶¶ 23 & 24.) The gravamen of the allegation that Defendant failed to meet the standard of care required by the agreement is professional negligence. The relevant agreement provision merely restates the legal duty the law imposes on architects. (Dkt. No. 1-3 at ¶ 5.) The claim based on that provision therefore sounds in tort.

In *L.B. Laboratories, Inc. v. Mitchell*, 39 Cal.2d 56 (1952), for example, the California Supreme Court held that the gravamen of a breach of contract claim against an accountant for the untimely filing of a return was contract and not tort. The Court reasoned:

> In the instant case the complaint shows and the court found that defendant contracted to do a specific thing, namely, to prepare and file plaintiff's income tax returns in the time required by law. There is no equivocation or shading of the obligation. ***It was not limited to the exercise of ordinary care.*** It was a positive, specific duty which he assumed. Any justification or excuse for failure to perform it could be a matter of defense. It differs in that respect from an action against a physician who does not agree to achieve any particular result; he merely agrees to act in a non-negligent manner. Even in the physician cases it would not be doubted that if a doctor is specifically employed to remove a wart from the patient's foot but removes one from his face, there would be a breach of contract. Likewise, it is dissimilar from an accountant who is employed generally to audit the employer's books where he assumes the general obligation to exercise due care.

*L. B. Labs., Inc. v. Mitchell*, 39 Cal. 2d 56, 63 (1952) (emphasis added). Here, the alleged breach based on the failure to "follow the standard of care in the agreement" is the same standard of care "ordinarily exercised under similar conditions by similar design professionals practicing at the same time in the same or similar locality." (Dkt. No. 1-3 at ¶ 5.) Thus, to the extent the breach of contract claim relies on that section of the contract, it is barred by the two-year negligence statute of limitations. *See Hensler*, 8 Cal. 4th at 22-23; *see also Huizar v. Four Seasons Nursing Centers of San Antonio*, 562 S.W.2d 264, 265-66 (1978) ("The majority rule in this country is that, despite allegations of contract, malpractice suits are governed by the statute of limitations applicable to tort actions, rather than the statute applicable to actions for breach of contract because the cause of action sounds in tort rather than contract.").

However, construing the factual allegations in the light most favorable to Plaintiff, the Court cannot conclude as a matter of law that every alleged breach of the agreement sounds in tort, that is, that Plaintiff does not also allege that Defendant breached a contract to do a specific thing separate from merely agreeing to comply with the ordinary standard of care. For example, Plaintiff alleges breach by "failing to follow the functional requirements for the Project," and a functional requirement of the contract was that "the new building was to work with the existing 1979 building as a functional whole." (*Id*. 1-3 at ¶ 9.) The court cannot determine on the present

record that this allegation, among others, does not allege a specific breach as contemplated in *L.B. Laboratories, Inc.*. *See Quintilliani v. Mannerino*, 62 Cal. App. 4th 54, 66 (1998), *as modified on denial of reh'g* (Apr. 2, 1998) ("Because the nature of the duties to be performed and the nature of the alleged wrongful conduct are factually disputed issues, we cannot say whether the gravamen of the action is legal malpractice or not, i.e., we cannot say whether the legal or nonlegal functions were the predominate reason for the agreement, nor can we say whether the alleged wrongful conduct was legal or nonlegal in nature"). Accordingly, the Court cannot conclude, as a matter of law, that the substance and gravamen of the entirety of Plaintiff's complaint sounds in tort as opposed to contract as pled.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's motion to dismiss to the extent Plaintiff's breach of contract claim rests on Defendant's ordinary obligation to perform work consistent with the standard of care imposed on an architect, but DENIES the motion to the extent Plaintiff's claim is based on a different breach of the contract. Defendant shall answer the complaint within 21 days of the date of this Order.

**IT IS SO ORDERED.**

Dated:

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

11